**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF SOUTH DAKOTA
ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
**PIERRE, SOUTH DAKOTA 57501-2463**

IRVIN N. HOYT
BANKRUPTCY JUDGE

TELEPHONE (605) 224-0560
FAX (605) 224-9020

December 16, 2005

David Nadolski, Esq.
Counsel for Plaintiff
Post Office Box 1920
Sioux Falls, South Dakota  57101

Patrick W. Kiner, Esq.
Counsel for Defendant-Debtor
Post Office Box 434
Mitchell, South Dakota  57301

        Subject: *Benjamin Schamber v. Jacqueline Fanchon Schamber (In re Jacqueline Fanchon Schamber)*,
Adv. No. 05-4069; Chapter 7, Bankr. No. 05-40658

Dear Counsel:

      The matter before the Court is the complaint to determine dischargeability of certain debts filed by Plaintiff Benjamin Schamber. This is a core proceeding under 28 U.S.C. 157(b)(2). This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, Plaintiff Benjamin Schamber's divorce-related claim against Defendant-Debtor Jacqueline F. Schamber will be declared nondischargeable.

      <u>Summary</u>. The parties agreed to submit this matter on stipulated facts and briefs. The Stipulation of Facts filed jointly on November 11, 2005, are incorporated herein by reference. Briefly, Defendant-Debtor Jacqueline F. Schamber ("Debtor") assumed certain marital debts when she and Plaintiff Benjamin Schamber ("Plaintiff") divorced. Debtor has failed to pay all those debts, including several on which Plaintiff is jointly liable. Plaintiff wants those joint debts declared nondischargeable under 11 U.S.C. 523(a)(15).

      The debts on which both parties are liable total $13,662.62, plus possible interest that has accrued.[1] On March 8, 2004,

---

[1] As identified by Plaintiff, the subject debts are:

    Credit Collections Bureau (Lookout Memorial Hospital),

*Schamber v. Schamber*
December 16, 2005
Page 2


Plaintiff obtained a separate contempt judgment against Debtor for her failure to pay the subject debts. The contempt judgment was for $14,234.48, which the Court presumes reflected the amount of the joint debts that Debtor failed to pay plus some interest and other costs.

Debtor filed her Chapter 7 petition on May 10, 2005. According to her schedules, she has equity of $13,000.00 in her home. She has limited personal property. She does not have any secured creditors.

Debtor's only income is $665.00 per month from Social Security. She is 54 years of age and disabled. Her monthly expenses total $1,547.77. There was no evidence in the record to discern whether Debtor's expenses are reasonable.[2]

Plaintiff works 40 hours per week at $10.40 per hour. The parties did not stipulate as to the amount or reasonableness of his monthly expenses.

In her answer, Debtor argued that a discharge of the subject debts would benefit her more than it would harm Plaintiff. She also said she did not have the financial ability to pay the subject debts. She did not timely file a brief.

In his brief, Plaintiff stated his take-home pay each month is about $1,000.00 and his monthly expenses are $992.60. He said he is presently living with his brother because he cannot afford rent. Plaintiff also stated in his brief that he is currently paying Rapid City Regional Hospital $50.00 per month on one of Debtor's

---

$504.01; Credit Collections Bureau (Radiology Associates), $196.59; Credit Collections Bureau (Queen City Medical), $419.89; Black Hills Collection Service (Family Medical Center), $521.26; Hauge Associates, $2,480.52; West River Anesthesiology (AAA Collections), $1,101.47; Urological Clinic of Rapid City, $828.90; Family Medical Center, $1,274.67; Marie Lattimer, $500.00; Gulf State Credit, L.L.C., $4,040.48; Clinical Labs of Midwest, $476.38; and Black Hills Collection Service (Rapid City Regional Hospital), $1,318.45.

[2] Debtor's Schedule J includes $150 for "payments of personal loans." That debt will have been discharged. However, even with that sum removed from her expenses, Debtor's income is still not sufficient to cover her expenses.

*Schamber v. Schamber*
December 16, 2005
Page 3

medical expenses to avoid having his wages garnished.

Regarding his health, Plaintiff stated he needs some dental work done and a work-related injury will likely cause his health to further deteriorate. Due to the injury, he expects to retire in May 2006, when he turns 62. Upon retirement, Plaintiff anticipates receiving monthly Social Security benefits of $571.00. Plaintiff says the Veterans' Administration has classified him as 50% disabled but he does not receive any financial benefits from the V.A.

Applicable law. Under 11 U.S.C. § 523(a)(15), a marital property settlement debt is presumptively nondischargeable unless the debtor can demonstrate he does not have the ability to pay the debt or the benefit of a discharge to him is greater than the detriment to his former spouse if the debt is discharged. *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 302 (Bankr. E.D. Ark. 1996))(*citing generally Straub v. Straub (In re Straub)*, 192 B.R. 522 (Bankr. D.N.D. 1996) (discussing placement of the burdens of proof upon the debtor and nature of elements to be proven), and *In re Gantz*, 192 B.R. 932 (Bankr. N.D. Ill. 1996) (burdens of proof)). The marital debt need not be owed to the spouse or former spouse but may be owed to a third party. *Henson*, 197 B.R. at 303.

The non-debtor spouse's threshold burden is merely to show she had a divorce-related claim not covered by § 523(a)(5). *Straub*, 192 B.R. at 527-28; *Henson*, 197 B.R. at 302-03. The burden then shifts to the debtor to show *either* he does not have the ability to pay the debt *or* discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse. 11 U.S.C. §§ 523(a)(15)(A) and (B); *Henson*, 197 B.R. at 303 (*citing In re Morris*, 193 B.R. 949 (Bankr. S.D. Cal. 1996)). The debtor must make these showings by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Under subsection (A) of § 523(a)(15), the Court must look at the debtor's ability to pay the debt from his disposable income, *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 54 (B.A.P. 8th Cir. 1998, now or in the future. *Beggs v. Beggs (In re Beggs)*, 314 B.R. 401, (Bankr. E.D. Ark. 2004). The inquiry begins with an analysis of the debtor's current financial circumstances and ends with an analysis of whether that situation is fixed or likely to change in the foreseeable future. *Straub*, 192 B.R. at 528.

> [O]nce the court has taken into account a debtor's "reasonably necessary" personal and business expenses,

>the court must determine if the debtor has enough assets
>or income sufficient to pay the obligations at issue.
>See In re Beck, 298 B.R. [616,623-24 (Bankr. W.D. Mo.
>2003)](citing Stuart v. Koch (In re Koch), 109 F.3d 1285,
>1289 (8th Cir. 1997)). In doing so, the court should
>consider the debtor's entire economic circumstances. Id.

Beggs, 314 B.R. at 417. Those circumstances include the debtor's future ability to pay the debt, especially where the debtor has the ability to pay the debt over time. Beggs, 314 B.R. at 418; Straub, 192 B.R. at 528.

Under subsection (B) of § 523(a)(15), the debtor must demonstrate "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." The point in time to weigh these benefits and detriments to each party is at the time of the dischargeability trial, not when the divorce order was entered; this allows the Court to fully examine the benefits of the "fresh start" to the debtor, any change in circumstances in employment, and other good or bad fortune which may have befallen the parties. Henson, 197 B.R. at 303. In considering changed events, and particularly the benefits of discharge given one party, the current and future financial circumstances of the parties are better analyzed. Id.(citing In re Dressler, 194 B.R. 290 (Bankr. D.R.I. 1996), and In re Taylor, 191 B.R. 760 (Bankr. N.D. Ill. 1996)).

Discussion. There is no dispute the subject debts fall under 11 U.S.C. § 523(a)(15). The issue then presented is whether under § 523(a)(15)(A), Debtor does not have the ability to pay the debts, or under § 523(a)(15)(B), the benefit Debtor will receive from a discharge of the debts outweighs any detriment to Plaintiff if the debts are discharged. Debtor has failed to meet her burden of proof under either subsection of § 523(a)(15).

Ability to pay. It is true that Debtor's meager income, age, and health preclude her from earning more to pay the subject debts. However, Debtor holds equity of $13,000.00 in her home. Thus, she does have an asset with which she could pay the subject debts in substantial part. Though she cannot be forced to sell her home as long as the equity is below her homestead exemption of $30,000, the Court cannot disregard this significant asset when applying § 523(a)(15)(A). Smith v. Smith (In re Smith), 229 B.R. 792, 795-96 (Bankr. E.D. Cal. 1998)(exempt property, including a home, is considered as an available asset to pay claims under § 523(a)(15)(A)); Williams v. Williams (In re Williams), 210 B.R.

344, 346-47 (Bankr. D. Neb. 1997). Accordingly, because Debtor possesses a liquid asset with which she could pay Plaintiff, she has not met her burden of showing she has no ability to pay the subject debts.

The Court realizes losing the equity in her home or losing the home entirely may be an unwelcome and unexpected result of bankruptcy for Debtor. However, the Court does not find that result inequitable when the funds Debtor used to buy the house were originally to be used to pay the subject marital debts.

*Balancing of hardships*. It was also Debtor's burden to show any detriment Plaintiff would suffer if the several subject debts were discharged was outweighed by the benefits she would receive if the debts were discharged. Plaintiff noted this issue was a "jump ball." The Court agrees. Both parties would greatly benefit from being out from under the burden of these debts. Since the scales do not tip in Debtor's favor, the Court cannot declare the subject debts dischargeable under the balancing of the equities test at subsection 523(a)(15)(B).

Since Debtor failed to show either exception under § 523(a)(15)(A) or § 523(a)(15)(B) applies, the law presumes the subject debts are nondischargeable. The nondischargeable amount will be the amount of the contempt judgment plus any interest that may have accrued between the date of the judgment and Debtor's petition date, since that amount apparently includes the several joint marital debts Debtor was ordered to pay in the divorce.[3] Counsel for Plaintiff shall submit an appropriate order for entry of judgment and a judgment.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

I hereby certify that a copy of this document was electronically transmitted, mailed, hand delivered or faxed this date to the parties on the attached service list.

DEC 16 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court, District of South Dakota
By

INH:sh

NOTICE OF ENTRY
Under F.R.Bankr.P. 9022(a)
Entered

DEC 16 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court
District of South Dakota

CC: adversary file (docket original; serve parties in interest)

---

[3] To declare both the state court contempt judgment and the several joint marital debts nondischargeable under § 523(a)(15) would result in a duplication of debt.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0869-4<br>Case 05-04069<br>South Dakota<br>Southern (Sioux Falls)<br>Fri Dec 16 15:10:10 CST 2005 | Hoyt Irvin N.  | Kiner Patrick W.<br>PO Box 434<br>Mitchell, SD 57301 |
| Nadolski David L.<br>PO Box 1920<br>Sioux Falls, SD 57101-3020 | Schamber Benjamin | Schamber Jacqueline Fanchon<br>511 Beach SE<br>Huron, SD 57350 |

End of Label Matrix
Total addresses 5